# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 15, 2025          Decided March 17, 2026

No. 23-3054

UNITED STATES OF AMERICA,
APPELLEE

v.

LINWOOD DOUGLAS THORNE,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cr-00389-1)

———

*Timothy Cone*, appointed by the court, argued the cause and filed the briefs for appellant.

*Bryan H. Han*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Chrisellen R. Kolb* and *Nicholas P. Coleman*, Assistant U.S. Attorneys. *Chimnomnso N. Kalu*, Assistant U.S. Attorney, entered an appearance.

Before: PAN and GARCIA, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PAN.

2

Opinion concurring in part and concurring in the judgment filed by *Senior Circuit Judge* ROGERS.

PAN, *Circuit Judge*:  Law enforcement officers routinely track the locations of cell phones to obtain leads and evidence when investigating suspected criminal activity.  They can pinpoint a cell phone's whereabouts within just a few feet.

In this case, Linwood Thorne contends that the government tracked his cell phone without a valid warrant.  According to Thorne, the warrant that officers obtained violated the venue provision of Rule 41(b) of the Federal Rules of Criminal Procedure because the D.C.-based magistrate judge who signed the warrant had an insufficient basis to find that the targeted cell phone was located within the District of Columbia at the time that the warrant was issued.  That jurisdictional error, he asserts, invalidates the warrant, requires suppression of critical evidence, and thus mandates reversal of his convictions on drug-trafficking and firearms charges.

Because law enforcement officers relied in good faith on the warrant, regardless of whether it was lawfully issued, suppression is unwarranted and we affirm.

## I. Background

### A. Factual Background

In 2018, the Federal Bureau of Investigation (FBI), the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and the D.C. Metropolitan Police Department (MPD) conducted a joint, interstate investigation of Omar Elbakkoush, whom they suspected of trafficking in drugs and firearms.  The investigation spanned D.C., Maryland, and Virginia, where undercover agents conducted multiple controlled buys of drugs and firearms from Elbakkoush.  Those activities led authorities

3

to Elbakkoush's suspected heroin supplier: appellant Linwood Thorne.

By surveilling Elbakkoush and Thorne in D.C. and Maryland, law enforcement officers determined that Thorne likely resided with his girlfriend, Kelli Davis-Johnson, at her home on Foote Street in northeast D.C., and that he owned an auto body shop called "Dou' Perfect" in Clinton, Maryland. On December 19, 2018, officers executed search warrants at both properties.

In the D.C. residence, officers found over fifty pounds of marijuana in duffle bags, as well as about forty-four kilograms of heroin and fentanyl in locked tool chests. They also discovered drug paraphernalia, including sifters, blenders, digital scales, and small baggies. In the master bedroom were six guns, five of which were concealed in bags and unregistered (three Glock pistols, a Ruger pistol, and a Taurus pistol); the sixth gun was lawfully registered to Davis-Johnson. Thorne's name was on a receipt, mail, and a hotel membership card located in the same bedroom. In the Maryland auto body shop, officers found Thorne's passport, his birth certificate, his credit card, and a lease to the property in his name.

After the searches of Thorne's suspected home and place of business, a grand jury in the District of Columbia indicted Thorne on multiple criminal charges, and a warrant was issued for his arrest. Law enforcement officers from the U.S. Marshals Service, the ATF, and the FBI sought to determine Thorne's whereabouts to execute the arrest warrant. They did so in part by tracking his cellular devices.

The agents knew of two cell-phone numbers associated with Thorne. The first had a Maryland area code — 301. Law enforcement became aware of that phone number through a pen register installed on Elbakkoush's cell phone, and they traced

4

the 301 number to Thorne's Maryland auto body shop. After the authorities searched the D.C. home on Foote Street, Thorne's girlfriend confirmed that the 301 number belonged to Thorne.

The second phone number had a D.C. area code — 202. Agents learned of Thorne's connection to that phone from a Maryland-based attorney, Ivan Bates, who claimed to represent Thorne. Bates and another attorney contacted the authorities and attempted to negotiate Thorne's voluntary surrender — either at the attorneys' Baltimore offices or at a courthouse in D.C. When those negotiations failed, law enforcement officers endeavored to track both of Thorne's cell phones so that they could effectuate his arrest.

For each of Thorne's phone numbers, the officers applied for two types of cell-phone location warrants: a GPS-ping warrant and a cell-site-simulator warrant. A GPS-ping warrant "orders a cellular telephone company to affirmatively create evidence about the whereabouts of a particular cellular telephone" by sending a "ping" to the cell phone, collecting the GPS coordinates reported back, and transmitting those results to law enforcement. *In re Search of Cellular Tel.*, 430 F. Supp. 3d 1264, 1273 (D. Utah 2019). After "pinging" the phone, the carrier uses satellite data to triangulate the phone's approximate location, *United States v. Caraballo*, 831 F.3d 95, 99 (2d Cir. 2016), within about 500–1,000 meters.

By contrast, a cell-site-simulator warrant allows law enforcement officers to more precisely pinpoint a phone's location. The cell-site simulator mimics a cell tower with "an especially strong signal," which "induces nearby cell phones to connect and reveal their direction relative to the device." *United States v. Patrick*, 842 F.3d 540, 542 (7th Cir. 2016). The simulator initially collects unique identifying numbers

5

from all devices nearby, but it then can be focused on the targeted cell phone. U.S. Dep't of Just., *Department of Justice Policy Guidance: Use of Cell-Site Simulator Technology* 2 (2015), https://perma.cc/8TG4-JZ3V. By continuously analyzing signal strength and directional information in real time, the cell-site simulator can come close to determining a cell phone's exact location.

Here, a D.C. magistrate judge issued GPS-ping warrants and cell-site-simulator warrants for each of Thorne's Maryland and D.C. phone numbers. Law enforcement officers used the warrants to determine the location of Thorne's D.C. cell phone but not his Maryland phone, which was turned off at the relevant time. Ping data for the D.C. number revealed the phone's location in Baltimore, Maryland. A cell-site simulator deployed in Maryland then ascertained the phone's location at an apartment on Linden Avenue in Baltimore. The officers apprehended Thorne at that apartment.

During the arrest, law enforcement officers seized four cell phones, two belonging to Thorne and two belonging to James Hutchings, Thorne's drug-trafficking partner. They searched the contents of the cell phones after obtaining a warrant to do so. Evidence recovered from the phones confirmed that the unregistered firearms found at the Foote Street residence belonged to Thorne: Text messages on Hutchings's phone showed that Thorne purchased the firearms from a straw purchaser with Hutchings acting as the middleman.

### B. Procedural Background

A grand jury indicted Thorne on six counts: possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i) (count 1); possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (count 2); unlawful possession of a firearm,

6

in violation of 18 U.S.C. § 922(g)(1) (count 3); possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (count 4); possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (count 5); and conspiracy to distribute a controlled substance (heroin, marijuana, and fentanyl), in violation of 21 U.S.C. § 846 (count 6).

Thorne filed a motion to suppress the evidence obtained from the Linden Avenue search on the ground that the cell-site-simulator warrant violated Federal Rule of Criminal Procedure 41(b).[1]  He argued that there was insufficient evidence for the D.C.-based magistrate judge to make the requisite finding that the phone was located in the District at the time of the warrant's issuance.  The district court denied the motion, holding that (1) the magistrate judge properly issued the warrant in compliance with the applicable rule, and (2) even if the magistrate judge erred, law enforcement officers relied in good faith on the warrant and no evidence should be suppressed.  *See United States v. Thorne*, 548 F. Supp. 3d 70, 129–30, 139 (D.D.C. 2021).

After a seven-day trial, a jury convicted Thorne on all the drug-trafficking counts (counts 1, 4–6) and on one count of unlawful possession of a firearm (count 3).  It found Thorne not guilty of possessing a firearm in furtherance of a drug-trafficking offense (count 2).  The court sentenced Thorne to a total of 360 months of incarceration followed by 120 months of supervised release.  Thorne timely appealed the district court's ruling on his motion to suppress.  We have jurisdiction under 28 U.S.C. § 1291.

---

[1]    Thorne did not challenge the validity of the GPS-ping warrants, which were obtained under the Stored Communications Act (SCA), or of the cell-site-simulator warrant for his 301-area-code cell phone.

7

## II. Analysis

On appeal, Thorne renews his argument that the cell-site-simulator warrant for his 202-area-code cell phone was invalid because it violated Rule 41(b) of the Federal Rules of Criminal Procedure.  He further argues that the good-faith exception to the warrant requirement is inapplicable.  He seeks reversal of all his convictions because, he claims, the evidence from the allegedly illegal search was critical to his firearms conviction and also infected his drug-related convictions.

We are unpersuaded.  Even assuming that the magistrate judge erred in issuing the cell-site-simulator warrant, we hold that suppression of the fruits of that warrant is unjustified because the investigating officers reasonably relied on the warrant in good faith.  *See United States v. Leon*, 468 U.S. 897, 920 (1984); *United States v. Magruder*, 126 F.4th 671, 679 (D.C. Cir. 2025).  We therefore affirm the judgment of the district court.

Because we rely on the good-faith doctrine, we do not resolve Thorne's primary argument that a warrant issued under Rule 41(b) must be premised on probable cause that the persons or objects to be searched or seized are "within the district."

### A. The District Court's Decision

Thorne's motion to suppress evidence argued that the magistrate judge who issued the cell-site-simulator warrant violated Federal Rule of Criminal Procedure 41(b), which authorizes the district court to issue warrants for persons or property that are located within the court's jurisdiction.

Rule 41(b) generally allows a judge "with authority in the district . . . to issue a warrant to search for and seize a person or property located within the district."  Fed. R. Crim. P.

8

41(b)(1).  But it also provides that "a warrant for a person or property outside the district" is valid so long as "the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed."  Fed. R. Crim. P. 41(b)(2).  Here, when the magistrate judge signed the cell-site-simulator warrant, she implicitly credited the government's representation that Thorne's cell phone was presently located within the District of Columbia but might be moved outside the District before the warrant was executed.  *See* App. 321 (warrant affidavit) (noting that "there is reason to believe the Target Cellular Device is currently located somewhere within this district," and stating that "[p]ursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Device outside the district provided the device is within the district when the warrant is issued").

In his suppression motion, Thorne claimed that the warrant was facially invalid and void *ab initio*.  He asserted that there was insufficient evidence that the targeted cell phone was "located within the district," as required by the Rule, when the magistrate judge issued the warrant.  As a result, he argued, the execution of the warrant in Maryland was unlawful, and any evidence obtained based on the warrant must be suppressed — including the information linking him to five of the firearms found at the Foote Street residence.

The district court denied Thorne's motion to suppress.  *See Thorne*, 548 F. Supp. 3d at 139.  After noting that the degree of certainty required to find that a "person or property is located within the district" under Rule 41(b) is an issue of first impression, *id.* at 117, it ruled that the finding must be based on a "reasonable belief."  The district court rejected Thorne's argument that the Rule requires actual knowledge that the object in question is within the district at the time of the warrant's issuance, reasoning that such an interpretation would

9

produce "absurd results" and conflict with Fourth Amendment precedents that favor a more flexible reading of the Rule. *Id.* at 119–24. Instead, the district court agreed with the government that the Rule requires only a "reason to believe" that the warrant's object is located within the district. *Id.* at 117. The district court concluded that no violation occurred here because officers had reason to believe that Thorne and his 202-area-code cell phone were in the District of Columbia at the time the warrant issued, given that he resided in the District and used a cell phone with a D.C. area code. *Id.* at 127–29.[2]

The district court rejected the government's alternative argument that the Rule required the magistrate judge to find "probable cause" that the targeted phone was located within the district. *Thorne*, 548 F. Supp. 3d at 125. It explained that requiring that degree of certainty would absurdly require law enforcement officers to know which single jurisdiction Thorne's cell phone was most likely to be in, when the purpose of the warrant was to discover that very information. *See id.* at 125–26. The district court further reasoned that the evidence before it pointed equally to Thorne's presence in "two judicial districts" — *i.e.*, D.C. and Maryland — and that law enforcement officers therefore would be "unable to establish venue in *any* jurisdiction" under a probable-cause standard. *Id.* at 126 (emphasis in original); *see also id.* ("[N]either the evidence connecting defendant to the District of Columbia nor the evidence connecting defendant to Maryland creates a 'fair probability' that defendant was in one district rather than the other."). The district court concluded that requiring such a high degree of certainty would be at odds with the Fourth Amendment and the Federal Rules of Criminal Procedure

---

[2]     The government points out that whether the use of a cell-site simulator constitutes a Fourth Amendment search is an open question. But the government does not argue that no warrant was necessary because there was no search, so we do not reach that issue.

10

because it would make warrants less accessible in a geographic area "where residents have easy access to at least three adjoining jurisdictions" — *i.e.*, D.C., Maryland, and Virginia. *Id.*

In the alternative, the district court denied Thorne's suppression motion by applying the good-faith exception to the warrant requirement. *Thorne*, 548 F. Supp. 3d at 129–35 (citing *Leon*, 468 U.S. at 921). The court held that even if the cell-site-simulator warrant violated the venue provision of Rule 41(b), the officers' good-faith reliance on that warrant was objectively reasonable, and suppression of the evidence therefore was not appropriate. *Id.* at 132.

## B. The Good-Faith Exception

We agree with the district court that the fruits of the cell-site-simulator search at issue were admissible under the good-faith exception to the warrant requirement, even if the magistrate judge issued the warrant in error. *See Leon*, 468 U.S. at 920; *Magruder*, 126 F.4th at 679. We therefore "exercise [our] informed discretion" to affirm the judgment of the district court on that ground, without deciding the merits of Thorne's claim that the warrant was invalid under Rule 41(b). *Leon*, 468 U.S. at 925; *see also Herring v. United States*, 555 U.S. 135, 139 (2009) (assuming a Fourth Amendment violation and resolving the petition based on the good-faith exception).

### 1. *Background Principles*

The Fourth Amendment prohibits unreasonable searches and seizures, including certain investigatory searches conducted without a valid warrant. *See* U.S. Const. amend. IV; *see also Katz v. United States*, 389 U.S. 347, 357 (1967) (noting that warrantless searches "are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically

11

established and well-delineated exceptions" (cleaned up)); *United States v. Green*, 149 F.4th 733, 743 (D.C. Cir. 2025). As a general matter, evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and must be suppressed — *i.e.*, it may not be used by prosecutors to establish a criminal defendant's guilt. *Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *see also Leon*, 468 U.S. at 905–06; *Green*, 149 F.4th at 743 ("If the government oversteps th[e] constitutional boundary [prohibiting warrantless searches], the remedy is generally exclusion — courts must suppress the unlawfully obtained evidence and any derivative evidence tainted by the violation unless an exception applies.").

Although suppression of evidence is the default remedy for a Fourth Amendment violation, the Supreme Court recognized a good-faith exception to that general rule in *United States v. Leon*: When an officer relies in good faith on a warrant issued by a judicial officer, even if that warrant is later found to be deficient, evidence discovered as a result of the unlawful search or seizure will not be suppressed. 468 U.S. at 920–21.

In *Leon*, officers obtained a warrant to search multiple residences and vehicles for evidence of alleged drug-trafficking, but that warrant was issued in error because it was unsupported by probable cause. 468 U.S. at 902, 926. Although the search without probable cause violated the Fourth Amendment, the Supreme Court held that the discovered evidence need not be suppressed. *Id.* at 926. The Court reasoned that the officers had properly sought a warrant, did not exhibit "dishonest[y] or reckless[ness] in preparing their affidavit," and had "an objectively reasonable belief in the existence of probable cause." *Id.* Thus, exclusion of the evidence would not serve its intended purpose of "deter[ring] police misconduct" and instead would "punish the errors of

12

judges and magistrates." *Id.* at 916.  The Court explained that the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect" on law enforcement officers.  *Id.* at 906 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). In the absence of a "substantial deterrent effect," the rule cannot "pay its way" to justify the substantial cost to society of depriving a jury of probative, reliable evidence.  *Id.* at 907 n.6 (citation omitted).  Thus, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," *id.* at 920, the fruits of that warrant will be shielded from suppression, even if the warrant issued in error.

Since *Leon*, the Court has expanded the good-faith exception to apply in other situations where law enforcement officers have acted reasonably and in good faith, but ultimately unlawfully.  Under such circumstances, where a Fourth Amendment violation occurs in the absence of police misconduct, the Court has determined that the cost of excluding evidence outweighs any potential deterrent benefit.  It has therefore extended the good-faith exception to cases involving evidence that was unlawfully obtained in reliance on: (1) a statute later found to be unconstitutional, *Illinois v. Krull*, 480 U.S. 340, 346, 359–60 (1987); (2) binding precedent that was later overturned, *Davis v. United States*, 564 U.S. 229, 239–40 (2011); and (3) a warrant database later found to contain errors, *Arizona v. Evans*, 514 U.S. 1, 14 (1995); *Herring*, 555 U.S. at 136–37.

In each of those cases, despite mistakes leading to a search or seizure in violation of the Fourth Amendment, the Supreme Court weighed the culpability of the law enforcement officers, *see Herring*, 555 U.S. at 143, in determining whether the deterrent effect of suppressing evidence justified the "high cost

13

to both the truth and the public safety," *Davis*, 564 U.S. at 232; *see also id.* at 237 (noting the heavy toll of "ignor[ing] reliable, trustworthy evidence bearing on guilt or innocence" and, in some cases, "set[ting] the criminal loose in the community without punishment"). In performing that balancing test, the Court has held that evidence should be suppressed when officers do not act in good faith, *i.e.*, "when the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Id.* at 238 (cleaned up). In that type of scenario, "the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.* Likewise, when a violation is caused by "recurring or systemic negligence on the part of law enforcement," suppression is warranted. *Id.* at 240 (cleaned up).

Consistent with the Supreme Court's precedents, we have routinely applied the good-faith exception to foreclose the suppression of unlawfully obtained evidence under circumstances where law enforcement officers were essentially blameless. *See, e.g.*, *United States v. Matthews*, 753 F.3d 1321, 1325–26 (D.C. Cir. 2014) (applying *Leon* where a warrant later was determined to be invalid); *United States v. Southerland*, 486 F.3d 1355, 1361 (D.C. Cir. 2007) (applying *Evans* and the good-faith exception to avoid suppressing evidence obtained after an error in a database indicated that the defendant's driver's license was suspended).

Moreover, we also have applied the good-faith exception in a case that did not directly implicate the Fourth Amendment. In *Magruder*, we determined that suppression of certain evidence was not required even though it was obtained in reliance on a warrant with an alleged statutory jurisdictional defect. 126 F.4th at 679. There, the defendant argued that the warrant in question was invalid because the issuing judge lacked jurisdiction under the Stored Communications Act

14

(SCA). *Id.* We assumed that suppression of evidence would be an appropriate remedy if the warrant were unlawful, but we nevertheless determined that, even if the "magistrate acted in error, the evidence [wa]s admissible under the good-faith exception." *Id.* Applying *Leon*, we concluded that because officers relied in good faith on the warrant, suppression could not "justify the substantial costs of exclusion." *Id.* (quoting *Leon*, 468 U.S. at 922).

While the instant case presents our first opportunity to consider whether the good-faith exception may be applied where a defendant alleges a violation of Rule 41(b), eleven of our sister circuits have extended that exception to this very context. *See United States v. Levin*, 874 F.3d 316, 321–24 (1st Cir. 2017) (concluding that the good-faith exception can apply to Rule 41(b) jurisdictional violations); *United States v. Eldred*, 933 F.3d 110, 118–21 (2d Cir. 2019) (same); *United States v. Werdene*, 883 F.3d 204, 216–18 (3d Cir. 2018) (same), *cert. denied*, 586 U.S. 896 (2018); *United States v. McLamb*, 880 F.3d 685, 690–91 (4th Cir. 2018) (same), *cert. denied*, 586 U.S. 855 (2018); *United States v. Ganzer*, 922 F.3d 579, 586–87 (5th Cir. 2019) (same), *cert. denied*, 589 U.S. 995 (2019); *United States v. Moorehead*, 912 F.3d 963, 966–67 (6th Cir. 2019) (same), *cert. denied*, 589 U.S. 999 (2019); *United States v. Kienast*, 907 F.3d 522, 527–29 (7th Cir. 2018) (same), *cert. denied*, 587 U.S. 972 (2019); *United States v. Horton*, 863 F.3d 1041, 1050–51 (8th Cir. 2017) (same), *cert. denied*, 584 U.S. 918 (2018); *United States v. Henderson*, 906 F.3d 1109, 1118–19 (9th Cir. 2018) (same), *cert. denied*, 587 U.S. 995 (2019); *United States v. Workman*, 863 F.3d 1313, 1317–19 (10th Cir. 2017) (same), *cert. denied*, 584 U.S. 935 (2018); *United States v. Taylor*, 935 F.3d 1279, 1288–91 (11th Cir. 2019) (same), *cert. denied*, 589 U.S. 1268 (2020).

15

2. *Application of the Exception*

Against that backdrop, we conclude that the good-faith exception applies to warrants issued in violation of Rule 41(b). Our holding is a natural extension of *Leon* and *Magruder* and is consistent with the decisions of every other court of appeals that has considered the issue.

Here, like in *Leon*, officers properly obtained and relied on a warrant.  The warrant authorized them to use a cell-site simulator to ascertain the location of Thorne's cell phone, which led to Thorne's arrest and the discovery of incriminating evidence.  The officers acted in good-faith reliance on the warrant, and did not engage in "deliberate, reckless, or grossly negligent" conduct.  *Davis*, 564 U.S. at 238 (cleaned up).

Indeed, the investigating officers submitted a warrant application that appropriately addressed the venue issue and provided facts to allow the magistrate judge to make the requisite findings.  The warrant affidavit stated, in relevant part:

> [T]here is reason to believe the Target Cellular Device is currently located somewhere within this district because the Target Cellular Device belongs to Linwood Thorne ("THORNE") and THORNE resided at 4215 Foote Street Northeast, Washington, D.C., on or about December 19, 2018. . . .  After speaking to a different resident of the house, law enforcement confirmed that THORNE continued to use the Target Cellular Device as his own cell phone. Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Device outside the district provided the device is within the district when the warrant is issued.

16

App. 321 (warrant affidavit). Beyond providing that information, there was little more that the officers could have done to demonstrate that they had a good-faith belief that the cell phone was in the District of Columbia on December 26, just seven days after they confirmed that Thorne lived in D.C.

Thorne essentially asserts that the magistrate judge who issued the warrant made a legal error concerning the degree of certainty with which the location of the targeted cell phone should have been established before the warrant could be approved. He claims that the magistrate judge was required to find "probable cause" that the cell phone was in the District, and that there was insufficient evidence to meet that standard. That novel legal issue has not previously been addressed by an appellate court, and it fell within the province of the magistrate judge to resolve it in the first instance. *Cf. McLamb*, 880 F.3d at 689, 691 (noting the unsettled permissibility of remote-access investigative techniques and concluding that law enforcement acted in good faith by submitting the question to attorneys and the issuing judge). And by issuing the warrant, the magistrate judge implicitly determined that she had jurisdiction to do so. Because the asserted error is attributable only to the issuing magistrate judge and not to the investigating officers — who were entitled to rely on the judge's conclusion that she had jurisdiction — suppression of evidence would not "logically contribute to the deterrence" of police misconduct. *Leon*, 468 U.S. at 921.

This case is also much like *Magruder* because Thorne makes a claim of improper venue that deprived the magistrate judge of jurisdiction to issue the cell-site-simulator warrant. *See Magruder*, 126 F.4th at 679. In *Magruder*, the defendant sought to withdraw his guilty plea because, he contended, his ineffective attorney failed to argue that the GPS-ping warrant issued by a judge in the Eastern District of Louisiana was

17

jurisdictionally flawed and therefore invalid. *Id.* at 675, 679. Specifically, Magruder argued that the affidavit in support of the warrant failed to provide facts sufficient to establish venue, Brief for Appellant at 31–34, *Magruder*, 126 F.4th 671 (No. 22-3025), 2024 WL 380969, under the SCA's requirement that the issuing court either have "jurisdiction over the offense being investigated" or be in the district where the cellular service is located or its data is stored, 18 U.S.C. § 2711(3)(A)(i), (ii). Without addressing the merits of Magruder's argument, we concluded that the good-faith exception easily disposed of his contention that the evidence at issue would have been suppressed had his attorney challenged the warrant. *Magruder*, 126 F.4th at 679. Whatever jurisdictional flaw may have existed in the *Magruder* warrant due to a violation of the SCA's venue requirement, any such flaw was rendered immaterial by the good-faith exception. Because the alleged statutory violation in *Magruder* is analogous to the alleged violation of Rule 41(b) in this case, our rationale for applying the good-faith doctrine in *Magruder* strongly supports a similar outcome here.

In sum, our extension of the good-faith exception to the present circumstances is supported by (1) a straightforward application of the principles that underlie the exception; (2) our previous application of the exception to an analogous alleged statutory defect in a warrant; and (3) numerous on-point precedents from other circuits. Because the investigating officers relied on the cell-site-simulator warrant in good faith, the fruits of that warrant need not be suppressed, even if the warrant was issued in error.

We are unconvinced by Thorne's contrary argument. Thorne claims that the asserted jurisdictional defect in the cell-site-simulator warrant renders it facially invalid and void *ab initio*, precluding application of the good-faith exception

18

altogether.  But both cases he cites in support of that argument are inapposite.  The court in *Glover* reasoned that the good-faith exception was inapplicable because "Congress ha[d] spoken." *United States v. Glover*, 736 F.3d 509, 516 (D.C. Cir. 2013).  Title III of the Omnibus Crime Control and Safe Streets Act — the statute under which the warrant had issued — explicitly prohibited the admission of any evidence collected in violation of that chapter. *Id.* at 513, 515–16 (citing 18 U.S.C. § 2515).  Rule 41(b) contains no such categorical prohibition.  And the Tenth Circuit in *United States v. Krueger* only accepted the lower court's holding that the good-faith exception did not apply because the government failed to challenge that conclusion on appeal.  809 F.3d 1109, 1113 n.5 (10th Cir. 2015).

Moreover, both cases are factually distinguishable because they involved the issuance of facially invalid search warrants for objects undisputedly outside the courts' jurisdiction at the relevant times. *See Glover*, 736 F.3d at 510, 515 (suppressing the fruits of a warrant issued in D.C. permitting law enforcement to place a listening device in a vehicle parked in Maryland, a fact expressly acknowledged in the warrant affidavit); *Krueger*, 809 F.3d at 1111, 1113, 1117 (suppressing the fruits of a search warrant issued by a judge in Kansas for a home in Oklahoma — a fixed location undeniably outside the Kansas judge's jurisdiction).  Here, of course, the cell-site-simulator warrant issued for Thorne's 202-area-code cell phone suffered from no such facial invalidity.  The warrant application cited evidence to support a finding that Thorne and his cell phone likely were in the District of Columbia at the time the warrant issued because Thorne's residence was in the District.  Thus, there was no facial defect that would arguably preclude application of the good-faith exception.

19

**C. Standard of Proof Under Rule 41(b)**

Because we conclude that the good-faith exception applies to the cell-site-simulator search at issue and that the fruits of the search therefore need not be suppressed, we decline to resolve Thorne's primary argument on appeal — namely, that the magistrate judge issued the warrant without the requisite degree of certainty that the 202-area-code cell phone was located in D.C. Nevertheless, we note the following issue with the district court's analysis of this question.

As previously discussed, the district court held that the magistrate judge was required to find that there was "reason to believe" that the object of the warrant was "located within the district" at the time of the warrant's issuance. *Thorne*, 548 F. Supp. 3d at 127. The district court rejected the more rigorous "probable cause" standard because, it reasoned, the evidence pointed equally to Thorne's presence in D.C. and Maryland, so applying that standard would render the law enforcement officers "unable to establish venue in *any* jurisdiction." *Id.* at 126 (emphasis in original).

That reasoning appears to assume that the magistrate judge could only find probable cause that the cell phone was located in a single jurisdiction. *See Thorne*, 548 F. Supp. 3d at 126 ("[N]either the evidence connecting defendant to the District of Columbia nor the evidence connecting defendant to Maryland creates a 'fair probability' that defendant was in one district *rather than the other*." (emphasis added)). The Supreme Court, however, has held that "probable cause" merely requires a "fair probability," that it is "not a high bar," and that it demands less than fifty-percent certainty. *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up); *see also Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) ("[Probable cause] does not require the

20

fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands . . . .").

Thus, contrary to the district court's analysis, the probable-cause standard did not impose an evidentiary bar that was too high to permit a finding of venue "in *any* jurisdiction." Instead, the evidence in this case supported two findings of probable cause (*i.e.*, a "fair probability") regarding the targeted cell phone's location:  There was probable cause to believe that the cell phone was in D.C., based on evidence that Thorne resided at the Foote Street address; and there also was probable cause to believe that the phone was in Maryland, based on evidence that Thorne's place of business, Dou' Perfect, was in Clinton.

Putting aside the flaw in the district court's reasoning, there may be good reason to think that probable cause — the "commonsense, practical" inquiry that is core to the Fourth Amendment, *Illinois v. Gates*, 462 U.S. 213, 230 (1983) — is the most appropriate standard to apply in the Rule 41(b) context.  But we reserve the question for another day.

\*   \*   \*

For the foregoing reasons, the district court properly applied the good-faith exception to the warrant requirement to deny Thorne's motion to suppress evidence.  We therefore affirm the judgment of the district court.

*So ordered.*

ROGERS, *Senior Judge*, concurring in part and concurring in the judgment:  I join the court in holding that the good-faith exception to the warrant requirement under the Fourth Amendment to the Constitution, *United States v. Leon*, 468 U.S. 897, 920 (1984), requires affirmance of Thorne's conviction.  Accordingly, it is unnecessary for the court to address Thorne's other challenges, and I do not join the *dictum* in the court's opinion.

Presented with a question of first impression regarding the standard to apply in challenges to venue under Federal Rule of Criminal Procedure 41(b)(2), the district court acknowledged the probable cause standard for warrants under the Fourth Amendment, citing *Illinois v Gates*, 462 U.S. 213, 238 (1983). *United States v. Thorne*, 548 F. Supp. 3d 70, 125 (D.D.C. 2021).  Then, citing the United States Court of Appeals for the Third Circuit, the district court applied the "reason to believe" standard of *New York v. Payton*, 445 U.S. 573, 603 (1980), to the Rule.  *Id*. at 126; *see id*. at 125 (citing *United States v. Vasquez-Algarin*, 821 F.3d 467, 476 (3d Cir. 2016)).  The Third Circuit surveyed Supreme Court precedent regarding the probable cause and reasonable belief standards, and it analyzed how that precedent has been applied by different circuits. *Vasquez-Algarin*, 821 F.3d at 473–80.  It noted that this court, in *United States v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2005), and the United States Court of Appeals for the First, Second, and Tenth Circuits have determined that the reasonable belief standard requires less certainty than the probable cause standard.  *Id.* at 474.

The district court's analysis indicates that there are at least two reasonable interpretations of the evidentiary standard required to establish venue under Rule 41(b)(2).  *See Thorne*, 548 F. Supp. 3d at 124–27.  In Part II.C, the court comments today on the district court's determination of the Rule 41(b)(2) standard, critiquing the district court's probable cause analysis at 19–20.  This *dictum* could be understood to take a position

2

on the correct standard for establishing venue or to critique the district court's analysis of the probable cause standard under the Fourth Amendment.    Resolution of neither issue is necessary to the court's decision, and I would leave such matters for another day.